# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | |
|---|---|
| **RITA CARNEVALE**, | ) |
| | ) |
| Defendant-Appellant, | ) |
| | ) |
| v. | )     **I.D. No. 2409010523** |
| | ) |
| **STATE OF DELAWARE**, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| | ) |

## <u>ORDER</u>

This 2nd day of March 2026, the Court enters the following Order:

1. On September 19, 2024, approximately a dozen small business owners attended a meeting at Mrs. Robino's restaurant on the west side of Wilmington to discuss ways to boost business in the local community.[1] All was well until the meeting chair adjourned the meeting and asked for any final remarks from the attendees.[2] Defendant Rita Carnevale apparently felt that this would be a good time to announce that her car had been hit by illegal immigrants and that it was Joe Biden's fault.[3] Seated next to Carnevale, an attendee, Lanice Wilson, attempted to

---

[1] App. to Appellee's Answering Br. [hereinafter "A _"] at 41:12-42:10 (Court of Common Pleas Trial Tr.).
[2] A43:19 – A44:9.
[3] A44:10-22.

call the meeting to order as this was not a political meeting and Wilson felt that Carnevale was out of line.[4] This resulted in both women rising from their chairs as other attendees separated them.[5] Wilson left the room and went outside, only to realize she had left her computer bag inside the meeting.[6]

2.      As Wilson went up the stairs to go back into the restaurant to retrieve her bag, Carnevale met her in the doorway and physically bumped shoulders with her.[7] Wilson testified that the bump was forceful enough that "it spun me around" and "I lost my balance."[8] The parties exchanged more words, with Wilson calling Carnevale racist and Carnevale calling Wilson a Democrat and wishing failure on Wilson's business.[9] Wilson testified that the incident left her "shocked, embarrassed," and "super concerned."[10]

3.      Alexis Chike testified for the prosecution.[11] She was at the business meeting and although she knew neither of the women involved, she recalled

---

[4] A45:18 – A46:4.
[5] A46:20 – A47:7.
[6] A48:8-9.
[7] A48:13-23.
[8] A49:1-3.
[9] A49:4-18.
[10] A53:22-23.
[11] A78:6.

Carnevale's outspoken criticism of immigrants and Wilson's negative reaction to Carnevale's complaints.[12] Chike saw the Defendant bump Wilson "aggressively."[13]

4. Finally, the State called Wilmington Police Department Corporal Jennifer Harmon, a member of the department's Community Engagement Unit, who was in attendance at the meeting.[14] As the meeting was ending, Corporal Harmon left to get business cards from her vehicle.[15] She returned in time to see Carnevale "shoulder bump" Wilson on the stairway, much as the other two witnesses had testified.[16]

5. Carnevale was next to take the stand.[17] Despite being instructed by the Court to testify from memory, she read directly from notes she brought to the stand.[18] The Court admonished that she was not permitted to make a prepared speech but could refer to notes or an outline only to refresh her recollection as needed.[19] The only substantial discrepancy in Carnevale's version of events from that of the three State witnesses was that "Lanice nudged me with the side or her arm, with her arm into my side. And to defend myself, I nudged her arm off of my body."[20] In

---

[12] A81:6 – A82:23.
[13] A84:22.
[14] A108:8 – A109:21.
[15] A111:12-15.
[16] A112:13-16.
[17] A126:16.
[18] A126:19 – A128:3; A130:12 – A131:16.
[19] A128:1-16.
[20] A142:16-18.

3

Carnevale's view, Wilson was the initial aggressor and had deliberately "set up" Carnevale for the offensive touching charge.[21]

6. On the second day of testimony, the Court heard from Carnevale's other witness, Wen Ping Wang, through an interpreter.[22] Ms. Wang was a former customer of Carnevale's small business and was having dinner at Mrs. Rabino's Restaurant during the incident.[23] She testified that from her vantage point "five or six meters away,"[24] she saw Wilson nudge Carnevale first, but she did not consider the entire encounter a "big deal."[25]

7. After hearing closing argument from both sides, the Court of Common Pleas made detailed findings.[26] First, it found that the State had met its burden of proving that the Defendant intentionally touched Wilson with a part of her body knowing that she was thereby likely to cause offense or alarm.[27] This satisfied the elements of Offensive Touching under 11 *Del. C.* §601. As to whether the Defendant had shown that she was justified in touching Wilson under the Delaware law of self-

---

[21] A143:3-4.
[22] A160:14-16.
[23] A162:13 – A163:3.
[24] A175:14.
[25] A177:14.
[26] A206:17 – A215:12.
[27] A212:20-22.

4

defense, the Court determined that she had not.[28] Therefore the Court, sitting without a jury, found Carnevale guilty of offensive touching.[29]

8.      This recitation of the conflicting facts is necessary to properly frame Defendant's principal argument: that the evidence was insufficient to sustain the conviction.[30] She contends that the State's witnesses were not credible, that the Court incorrectly found proof beyond a reasonable doubt to support the offensive touching conviction, and that the Court improperly rejected her self-defense claim.[31]

9.      Carnevale argues that there was a reasonable doubt as to guilt because there were three witnesses for the State and two witnesses for the Defense, including herself.[32] She alleges the State's witnesses were "inherently incredible" as they failed to identify the victim as the initial aggressor.[33] Conflicts in testimony such as this are an issue properly resolved by the fact finder. This is indeed what fact finders do in virtually all trials on contested facts. The Court of Common Pleas properly weighed the testimony and found inadequate support for Carnevale's self-defense claim.

---

[28] A214:19-22.
[29] A215:8-10.
[30] Appellant's Opening Br. at 2.
[31] *Id.*
[32] *Id.* at 17.
[33] *Id.* at 11.

5

10.     Carnevale further argues that there was insufficient evidence to support a finding that she acted with requisite intent since "the State's witnesses could not have possibly known what Ms. Carnevale was thinking."[34]  Given the backdrop of the hostilities expressed just moments before at the community meeting, there was certainly evidence to support a conclusion that she intended to touch Wilson knowing it was likely to cause offense or alarm.

11.     Defendant appears to believe that one good shove deserves another and, if Wilson shoved her, she was justified under the law to shove her back.  One can only imagine where such a doctrine would ultimately lead us.  Fortunately, that is not the law of Delaware, or any other jurisdiction the Court is aware of.  The trial judge heard all the evidence, weighed the testimony, applied the law to the facts and found Carnevale guilty.  There was no error.

12.     Carnevale's other argument fares no better.  She complains that as a "pro se, senior citizen litigant" she should have been allowed to utilize the outline she prepared for trial and in preventing her from doing so, the Court denied her a "fair opportunity to present a coherent narrative and violated her right to due process."[35]

---

[34] *Id.* at 16.
[35] *Id.* at 18-19.

13. Carnevale represented herself at trial. She testified in her defense and approached the witness stand armed with numerous pages, prompting the Court to caution her that she should testify in her own words and not from a prepared speech. The Court did not permit her to read a verbatim speech, but did provide her numerous opportunities to refer to the outline to refresh her recollection as to what she wanted to explain from the stand.[36] She was permitted to stop and refer to her notes, after which she was directed to turn them over and testify from her memory.[37] This was a perfectly reasonable approach by the trial judge to accommodate the Defendant and keep the trial focused on the issues at hand.[38]

14. The Court of Common Pleas did not commit error, the trial was fundamentally fair, and Carnevale was not on the winning side. This Court, having reviewed Defendant's entreaties in this appeal, finds no error warranting reversal and therefore affirms the conviction and sentence of the Court of Common Pleas.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

---

[36] A126:19 – A128:3; A130:12 – A131:16.
[37] *Id.*
[38] *See generally* D.R.E. 611 ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence.").

cc:     Prothonotary
        Rita Carnevale
        Carly A. Wasko, Deputy Attorney General